J-E03004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                  : PENNSYLVANIA
                                                  :
                   v.                            :
                                                  :
BRANDI SNOWDEN                   : 
                                                  :
                Appellant         : No. 402 WDA 2023

Appeal from the Judgment of Sentence Entered March 8, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0005182-2022

BEFORE: LAZARUS, P.J., BOWES, J., OLSON, J., KUNSELMAN, J., NICHOLS,
        J., MURRAY, J., KING, J., BECK, J., and LANE, J.

MEMORANDUM BY MURRAY, J.:           **FILED: June 30, 2026**

Brandi Snowden (Appellant) appeals from the judgment of sentence entered following her non-jury conviction of possession of a controlled substance.[1] This appeal returns to us following our Supreme Court's March 18, 2026, order, which vacated our decision affirming Appellant's judgment of sentence and remanded with instructions to consider ***Commonwealth v. Lewis***, 343 A.3d 1016, 1036-37 (Pa. 2025) (setting forth relevant considerations for a suppression court in determining whether an area is high in crime). Upon careful review, we vacate the judgment of sentence and remand for further proceedings.

---

[1] 35 P.S. § 780-113(a)(16).

The trial court summarized the evidence adduced at the suppression hearing:

> On June 6, 2022[,] at about [8:15 p.m.], Officer [Ryan] Lawrence observed [Appellant] at a bus stop standing up, leaning on a trash can, nodding off.[2] Officer Lawrence and Officer Kerr[3] approached [Appellant], let her know their observations and asked if she was okay. [Appellant] responded that she was extremely tired. Officer Lawrence[,] concerned for [Appellant's] welfare[,] requested her [identification]. [Appellant] placed her purse on the ground and searched [it] for her [identification]. While [Appellant] searched her purse[,] Officer [Lawrence] saw syringes in plain view. [Appellant] tossed the syringes to the side in her purse. Officer Lawrence placed her under arrest. [] Officer [Lawrence] initially testified that he then asked to search [Appellant's] purse and that she agreed. On cross[-examination], [] Officer [Lawrence] testified that the search of [Appellant's] purse was incident to [her] arrest. … Upon search of [Appellant's] purse, [] Officer [Lawrence] found [] syringes, 7 stamp bags of heroin and fentanyl marked "Popeye[,"] and a Ziploc bag containing methamphetamine. Upon retrieval of the suspected narcotics, [Appellant] was taken to the [police] station.

Trial Court Opinion, 7/7/23, at 2-3 (unpaginated; some capitalization modified; footnotes added). Pertinently, at the suppression hearing, Officer Lawrence testified that "the Mount Oliver area is know[n as] a high drug area, especially in the 200 block of Mount Oliver and the 200 block of Brownsville Road." N.T., 2/2/23, at 7.

---

[2] At the suppression hearing, Officer Lawrence did not testify as to where his interaction with Appellant occurred; however, in his affidavit of probable cause, Officer Lawrence indicated he arrested Appellant in the 200 block of Brownsville Road in Mount Oliver, Allegheny County. **See** Affidavit of Probable Cause, 6/7/22, at 1.

[3] Officer Kerr's first name does not appear in the certified record.

On January 25, 2023, Appellant filed a pre-trial motion to suppress the physical evidence. Appellant argued her "seizure … by the officers was unreasonable." Motion to Suppress, 1/25/23, ¶ 3(o). The matter proceeded to an evidentiary hearing on February 2, 2023. Officer Lawrence testified as the sole witness, consistent with the trial court's above recitation.

Pertinently, at the suppression hearing, Appellant played a portion of Officer Lawrence's body-camera video (the Video)[4] to cross-examine Officer Lawrence concerning the basis for his search. N.T., 2/2/23, at 13. The following exchange occurred:

> [Appellant's counsel:] And you stated on direct [examination] that you asked for [Appellant's] consent to search [her purse]?
>
> [Officer Lawence:] Correct.
>
> [Appellant's counsel:] Do you recall on this date and time that you were wearing a body camera?
>
> [Officer Lawrence:] Yes.
>
> [Appellant's counsel:] And you had body camera footage to produce in this case; correct?
>
> [Officer Lawrence:] Right.
>
> [Appellant's counsel:] Your Honor, I'm going to be playing a portion of the [Video] from that day. Well, first, Officer, is this that [Video]?
>
> [Officer Lawrence:] Yes.
>
> ….

---

[4] We discuss whether we may consider the Video in reviewing the merits of Appellant's appeal, *infra*.

(Video is being played.)

….

[Appellant's counsel:] Officer, after watching the [Video], you would agree with me that you did not ask [Appellant] for consent to search [her purse]; correct?

[Officer Lawrence:] Correct. It was [a] search incident to arrest at that point.

[Appellant's counsel:] But that's not what you testified to on direct[ examination].

[Officer Lawrence:] I couldn't recall. If I watch the [Video] again, yeah.

*Id.* at 13-14. Appellant's counsel asked no further questions concerning the Video, and did not move for its admission into evidence.[5]

The Commonwealth asked Officer Lawrence three questions on cross-examination, only one of which pertained to the Video. *Id.* at 15 (Officer Lawrence agreeing, "as we saw in the [V]ideo, [Appellant] tried to deny knowledge of the needles in her purse when she saw them[.]"). Further, the Commonwealth argued during its closing statement that "the [V]ideo … is not evidence, it has not been admitted as evidence, so it cannot be considered …. The only evidence in the record[] is [Officer Lawrence's] testimony that was put forth by the Commonwealth[.]" *Id.* at 20.

---

[5] Appellant only briefly mentioned the Video during closing argument to the trial court. *See* N.T., 2/2/23, at 16-17 (Appellant's counsel stating, "We heard from [O]fficer [Lawrence] that [Appellant] stated she was tired. We saw [Appellant] in [the Video]. It's not a crime to be tired.").

The trial court denied Appellant's suppression motion on March 8, 2023. Order, 3/8/23.[6]  Following a stipulated bench trial, the trial court convicted Appellant of possession of a controlled substance.  The trial court sentenced Appellant to nine months of probation on March 8, 2023.  Appellant timely appealed.  Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On November 21, 2023, the parties filed a "Stipulation Order to Supplement Certified Record on Appeal" (Stipulation).  The Stipulation referred to and attached a section of the Video the parties agreed "was played in open court at [Appellant's suppression hearing]."  Stipulation, 11/21/23, at 1 (unpaginated).  The Stipulation stated the Video "is necessary for appellate review and the ultimate resolution of this case."  *Id.* at 2 (unpaginated).  The Stipulation did not, however, aver that the Video was properly admitted into evidence.[7]

---

[6] The trial court did not, as required by Pa.R.Crim.P. 581(I), "enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights."  Pa.R.Crim.P. 581(I).  However, while a trial court's Pa.R.A.P. "1925(a) opinion is no substitute for the failure to make findings of fact and conclusions of law on the record at the conclusion of a suppression hearing[,]" our review is not impeded based on the facts set forth in the trial court's Rule 1925(a) opinion. *Commonwealth v. Grundza*, 819 A.2d 66, 68 n.1 (Pa. Super. 2003) (citing *Commonwealth v. Reppert*, 814 A.2d 1196, 1200 (Pa. Super. 2002) (*en banc*)).

[7] In its brief, the Commonwealth maintains the Stipulation was not a concession that the Video was properly admitted at the suppression hearing. Commonwealth's Substituted Brief at 16 n.5.  Rather, the Commonwealth explains, "The [Video] exists, and at least a portion of it was played during the suppression hearing; this alone makes it a part of the record on appeal,

Following irrelevant procedure, we granted *en banc* review. On January 10, 2025, we affirmed Appellant's judgment of sentence, concluding that the trial court did not err in denying Appellant's suppression motion. ***See Commonwealth v. Snowden***, 330 A.3d 422, 435 (Pa. Super. 2025) (*en banc*). Appellant petitioned the Pennsylvania Supreme Court for allowance of appeal. In a March 18, 2026, order, our Supreme Court granted Appellant's petition,[8] vacated our decision, and remanded for consideration of ***Lewis***, ***supra***, which the Court issued on September 25, 2025. ***Commonwealth v. Snowden***, 2026 WL 761384 (Pa. 2026) (*per curiam*).[9]

_____

not unlike a statement uttered by a witness that is ultimately stricken by the trial court judge." ***Id.*** Based upon our review of the Stipulation, we agree with the Commonwealth and reject Appellant's argument to the contrary. ***See*** Appellant's Substituted Reply Brief at 11-12.

[8] Our Supreme Court granted Appellant's petition for allowance of appeal, limited to the following issues:

> 1) Did the Superior Court err and issue an opinion that conflicted with ***Commonwealth v. Barr***, 671 Pa. 275[,] 266 A.3d 25 (Pa. 2021), by finding probable cause when police approached [Appellant] in a purported "high drug area" and she displayed no suspicious activity?
>
> 2) Was the evidence insufficient to establish a "high drug area" when the officer did not explain how he reached this conclusion or otherwise support his claim?

***Commonwealth v. Snowden***, 2026 WL 761384 (Pa. 2026) (*per curiam*) (internal brackets omitted).

[9] On May 1, 2026, Appellant filed in this Court an application for relief, requesting leave to file substitute briefs, "given that ***Lewis*** introduced significant changes to an area of law that is central to this case[,] *e.g.*[,] the

- 6 -

Instantly, Appellant presents the following issue for our review:

Did the trial court err in denying suppression because police arrested [Appellant] without probable cause and, thereafter, conducted an unlawful search incident to arrest?

Appellant's Substituted Brief at 4 (capitalization modified).

Preliminarily, we recognize our standard of review:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on the appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the trial court are subject to plenary review.

*Commonwealth v. Robinson*, ___ A.3d ___, 2026 PA Super 49, *3 (Pa. Super. filed Mar. 17, 2026) (*en banc*) (citation omitted). "Our scope of review is limited to the evidence presented at the suppression hearing."

_____

level of proof necessary to establish that an area is 'high[-]crime[.]'" Application for Relief, 5/1/26, ¶ 10. Appellant represented that the Commonwealth does not oppose her application, but, if granted, requests leave to file a responsive substitute brief. *Id.* ¶ 12. In view of our disposition, we deny Appellant's application for relief (and the Commonwealth's request to file a responsive substitute brief) as moot. The parties' respective substituted briefs cited herein were filed in May-June 2024, following this Court's order granting rehearing *en banc*.

*Commonwealth v. Mackey*, 177 A.3d 221, 226 (Pa. Super. 2017) (citing *In re L.J.*, 79 A.3d 1073, 1080 (Pa. 2013)).

Where a defendant files a motion to suppress evidence, "[t]he Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H); *see also id.*, cmt. (stating that the standard of proof is a preponderance of the evidence). "Evidence obtained from an unreasonable search or seizure is inadmissible at trial." *Commonwealth v. Dunham*, 203 A.3d 272, 278 (Pa. Super. 2019) (citation omitted).

Initially, we consider whether our scope of review includes the Video used to impeach Officer Lawrence. Both the Commonwealth and the trial court maintain this Court may not consider the Video. *See* Commonwealth Substituted Brief at 11-15; Trial Court Opinion, 7/7/23, at 5 (unpaginated) (stating, "the … [V]ideo was never offered nor admitted into evidence.").

The Commonwealth emphasizes that Appellant failed to move for admission of the Video into evidence. Commonwealth's Substituted Brief at 13. Further, the Commonwealth argues "the suppression[ ]hearing transcript gives no real indication that [Appellant] played the [Video] for any purpose beyond demonstrating that [Appellant] never consented to the search of her purse[.]" *Id.* Finally, the Commonwealth argues that it timely objected to Appellant's characterization of the Video as substantive evidence during

closing argument. **See id.** (questioning, "when else would the prosecutor make such an objection other than after [Appellant] had rested, as it was only at that point that he knew that [Appellant] had not sought to admit the [Video] into evidence?").

Appellant counters the Video must be considered on appeal because 1) the Commonwealth "did not timely object to [Appellant] playing [the Video] during cross-examination of Officer Lawrence"; 2) the Commonwealth "relied on" the Video during redirect examination; and 3) case law supports the proposition that "a video that [is] played at trial but not formally admitted [is] part of the record." Appellant's Substituted Reply Brief at 3-4 (citing **Commonwealth v. Jones**, 271 A.3d 452, 456-57 (Pa. Super. 2021)).

"[E]xhibits that are merely marked for identification and submitted by the offering party do not constitute evidence on which a finder of fact can rely." **Jones**, 271 A.3d at 456 (citing **Dep't of Transp., Bureau of Driver Licensing v. Doyle**, 616 A.2d 201, 202 n.4 (Pa. Cmwlth. 1992), and **Denver Nursing Home v. Com., Dep't of Pub. Welfare**, 552 A.2d 1160, 1161-63 (Pa. Cmwlth. 1989)). Rather, "[i]t is fundamental and essential that, at trial, a document must be offered to and admitted by the court before it may be considered evidence…." **Dep't of Transp., Bureau of Driver Licensing v. McCrea**, 526 A.2d 474, 475 (Pa. Cmwlth. 1987);[10] **see also Commonwealth**

---

[10] Although this Court is not bound by decisions of the Commonwealth Court, such decisions may provide persuasive authority. **See Commonwealth v. Segarra**, 228 A.3d 943, 950 (Pa. Super. 2020).

*v. Duncan*, 314 A.3d 556, 567 n.7 (Pa. Super. 2024) (concluding that although a party marked notes of testimony as an exhibit for identification purposes, "[b]ecause those notes of testimony were never moved into the record, we cannot rely on their contents for purposes of our sufficiency review." (citation omitted)).

Pennsylvania Rule of Evidence 103 provides, in relevant part, as follows:

**(a) Preserving a Claim of Error.** A party may claim error in a ruling to admit … evidence only:

(1) if the ruling admits evidence, a party, on the record:

(A) makes a timely objection, motion to strike, or motion *in limine*; and

(B) states a specific ground, unless it was apparent from the context[.]

Pa.R.E. 103(a)(1).

Where a trial court admits evidence, Rule of Evidence 105 describes the procedure for limiting the use of evidence to its proper purpose:

If the court admits evidence that is admissible against a party or for a purpose--but not against another party or for another purpose--the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly. The court may also do so on its own initiative.

Pa.R.E. 105.

In considering whether the Video is properly before us, we are guided by this Court's analysis in *Jones*, *supra*, upon which both the Commonwealth and Appellant rely. In *Jones*, we examined, as a matter of first impression, whether we could consider a surveillance video not admitted into evidence

- 10 -

(but utilized extensively at trial) in ruling on a defendant's (Jones) sufficiency of the evidence challenge. *See id.* at 456.

The Commonwealth charged Jones with homicide and firearms offenses following a shooting at a bar in Allegheny County; the case proceeded to a non-jury trial. *See id.* at 455. As part of its case-in-chief, the Commonwealth "played video from the bar's surveillance system that showed the shooting and the events before and after the shooting." *Id.* Jones stipulated that the surveillance video was authentic, lodged no objection to the video being played, and cross-examined the witness who had secured the video concerning its contents. *See id.* "The Commonwealth did not move for admission of the video, but the trial court, the Commonwealth, and [Jones] all treated the video as admitted evidence after the Commonwealth rested." *Id.* Jones called a witness in his defense, for whom Jones's counsel played portions of the video. *See id.* Additionally, Jones's counsel "argued in his closing argument that the video showed that [Jones] acted in self-defense." *Id.*

At the conclusion of trial, the trial court convicted Jones of third-degree murder and firearms offenses. *See id.* Jones filed a post-sentence motion in which he "again asserted that the video was evidence before the trial court that could be considered in ruling on the sufficiency of the evidence and noted, without objection, that the trial court relied on the video in reaching its verdict." *Id.* at 456. The trial court denied Jones's motion. *Id.*

On appeal, Jones challenged the sufficiency of the evidence, and argued "this Court [could not] consider the video recording … because the video was not admitted in evidence." *Id.* The parties filed a "Limited Joint Stipulation" stating, "the parties agree that the video was not formally admitted into evidence at trial and that [Jones] does not waive his contention that the video cannot be considered in ruling on the sufficiency of the evidence." *Id.* at 456 n.2.[11]

> In concluding the video was appropriate for review, we explained,
>
> where the trial court, in fact, made a determination that the video was admissible before it was played, the video was in evidence and became part of the record once it was played without objection, even though no formal motion to admit it in evidence was made. Although it appears that there is no Pennsylvania precedent addressing this situation, courts in other jurisdictions have recognized that when a recording is played to the fact finder for its consideration, the recording is admitted in evidence and becomes part of the record[,] even if no formal motion is made for its admission. *Cull v. Commonwealth*, 2000 WL 311169 at *3 (Va. App. Mar. 28, 2000) (holding that "[i]rrespective of any characterization made by the trial judge, the contents of the tape were admitted into evidence when the jury viewed it"); *Kennebrew v. State*, … 480 S.E.2d 1, 4 ([Ga. ]1996) (defendant admitted evidence where he played tape recording even though he did not move the recording into evidence).

---

[11] The "Limited Joint Stipulation," purporting to preserve Jones's claim that the Commonwealth failed to seek the admission of the surveillance video into evidence, does not alter our conclusion in the instant appeal that the Commonwealth preserved its challenge to the Video. As explained above, the Stipulation in the case at bar contained no concession that the Video was competent evidence for the trial court's consideration.

*Id.* at 456-57 (footnote omitted); *see also Huber v. Etkin*, 58 A.3d 772, 780 n.8 (Pa. Super. 2012) (*en banc*) ("The decisions of courts of other states are persuasive, but not binding authority.").

We further concluded that Jones was "barred by waiver from contending that the video [could not] be considered." *Id.* at 457.

> [Jones] not only failed to object that the video was admitted and failed to object to the trial court's consideration of it before the trial court's verdict, he stipulated to the video's admissibility and used it in his case and in argument after the Commonwealth had rested.

*Id.* Significantly, "[a]t no time during trial, or even in his post[-]sentence motion, did [Jones] ever contend that the video was not part of the evidence before the trial court." *Id.*

Additionally, Appellant relies on *Commonwealth v. Wroten*, 257 A.3d 734 (Pa. Super. 2021), for the proposition that exhibits relied upon by the parties and the trial court, but not formally admitted into evidence, are competent evidence for appellate review. *See* Appellant's Substituted Reply Brief at 8-9.

In *Wroten*, the Commonwealth sought to refile charges in the trial court, which had been dismissed by a magisterial district judge. *Wroten*, 257 A.3d at 739. At the refile hearing, the Commonwealth marked as exhibits the preliminary hearing notes of testimony and a surveillance video (the exhibits). *See id.* at 740. Both the Commonwealth and Wroten extensively relied upon the exhibits in their arguments to the trial court. *See id.* At the conclusion

- 13 -

of the hearing, the Commonwealth failed to formally move for the exhibits' admission into evidence. *See id.* at 741. Nevertheless, "[i]n its Rule 1925(a) opinion, the trial court noted what the court deemed to be deficiencies in [the complainant's preliminary hearing testimony] and the surveillance video[,] and explained that it was dismissing the charges against [Wroten] …." *Id.*

This Court subsequently rejected Wroten's argument that the exhibits could not be considered on appeal. *Id.* The *Wroten* Court explained it was "apparent from the trial court's statements at the hearing that it accepted these items into evidence and considered them to be part of the record for the purpose of its analysis." *Id.* The *Wroten* Court further noted that Wroten "explicitly relied upon" the exhibits at the refile hearing, and did not

> lodge an objection to the surveillance video or notes of testimony, state that he had not had an opportunity to review these items, or argue to the trial court that it could not base its decision on this evidence because [the exhibits] were not part of the record.

*Id.* As a result, the Court determined the exhibits were appropriate for appellate review. *Id.*

Instantly, unlike in *Jones*, the trial court did not rule on the Video's admissibility before it was played, and there was no stipulation that the Video was authentic or admissible. Further, while both parties in *Jones* used the surveillance video to characterize the events it depicted, Appellant clearly, and successfully, utilized the Video solely to undermine Officer Lawrence's testimony that he had obtained Appellant's consent to search her purse. We are unpersuaded by Appellant's claim that the prosecutor's fleeting and

solitary reference to a statement Appellant made in the Video constituted acquiescence to the Video's admission into evidence. Moreover, unlike in **Wroten**, where the trial court used unadmitted exhibits in the analysis set forth in its Rule 1925(a) opinion, the trial court in the instant case explicitly noted that the "[V]ideo was never offered nor admitted into evidence." Trial Court Opinion, 7/7/23, at 5.

We are further unpersuaded by Appellant's claim that the Commonwealth waived its challenge to our consideration of the Video. It is undisputed that Appellant failed to move for admission of the Video into evidence. **See McCrea**, 526 A.2d at 475 ("It is **fundamental and essential** that, at trial, a document must be offered to and admitted by the court before it may be considered evidence…." (emphasis added)). While the Commonwealth lodged no objection when Appellant initially played the Video, the prosecutor argued, after the close of evidence, "that the [V]ideo and body cam footage is not evidence." N.T., 2/2/23, at 20; **see also Green v. Green**, 69 A.3d 282, 286-87 (Pa. Super. 2013) (recognizing that "because the [marked] exhibit was not formally moved into evidence, [the appellant] did not have a corresponding opportunity formally to object"; but finding the appellant waived his claim that the trial court erred by considering the exhibit, where the appellant "did not object to its use at [the] time [of the hearing] **or in the following proceedings**." (emphasis added)).

Because Appellant failed to move for the admission of the Video, the Commonwealth was deprived of the opportunity to object to its admission, or request that it be limited to the purpose for which it was plainly used, *i.e.*, as impeachment evidence. *See* N.T., 2/2/23, at 13-14 (Appellant utilizing the Video solely to question Officer Lawrence concerning his misstatement of fact on direct examination). Based upon the foregoing, we do not review the Video in our consideration of the merits of Appellant's claim.

Having concluded the Video is not within our scope of review, we consider Appellant's claim based upon the evidence of record.

The parties agree that Officer Lawrence was required to have probable cause to arrest Appellant and search her purse incident to arrest. Appellant's Substituted Brief at 15; Commonwealth's Substituted Brief at 10.

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a *probability*, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

*Commonwealth v. Martin*, 101 A.3d 706, 721 (Pa. 2014) (emphasis in original) (quoting *Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009)); *see also Lewis*, 343 A.3d at 1032 ("[P]robable cause[] is an inherently 'fluid' concept." (citation omitted)).

"As a general rule, a warrant stating probable cause is required before a police officer may search for or seize evidence." *Commonwealth v. Metz*, 332 A.3d 92, 100 (Pa. Super. 2025) (citation omitted). "Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable." *Id.* (citation omitted). One such exception is a search incident to arrest. *Id.*; *see also Commonwealth v. Lutz*, 270 A.3d 571, 579-80 (Pa. Super. 2022) ("The search incident to arrest exception allows arresting officers, in order to prevent the arrestee from obtaining a weapon or destroying evidence, to search both the person arrested and the area within his immediate control." (emphasis and citation omitted)); *In Int. of O.A.*, 717 A.2d 490, 495 (Pa. 1998) ("Where probable cause to arrest does not exist in the first instance, any evidence seized in a search incident to arrest must be suppressed." (citation omitted)).

> In examining the totality of the circumstances, it is well established that
>
> we must give due weight [] to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, **even a combination of innocent facts, when taken together, may warrant further investigation by the police officer**.

*Commonwealth v. Cunningham*, 287 A.3d 1, 11 (Pa. Super. 2022) (citation omitted; emphasis added). Further,

> [w]e do not review the evidence piecemeal, but consider the totality of the circumstances in assessing whether probable cause existed…. If the evidence supports the findings of the trial court,

those findings bind us and we may reverse only if the suppression court drew erroneous legal conclusions from the evidence.

*Commonwealth v. El*, 933 A.2d 657, 660 (Pa. Super. 2007) (citation omitted).

Pertinently, one such contextual factor a trial court may consider, in its totality-of-the-circumstances analysis (and the basis for the instant remand), is whether law enforcement's interaction with an individual occurred in a high-crime area. *See Commonwealth v. Joseph*, 34 A.3d 855, 863-64 (Pa. Super. 2011) ("[A] police officer's observance of a defendant's conduct inside a 'high[-]crime area' may, along with other factors, contribute to a finding of probable cause." (emphasis omitted) (citing *Commonwealth v. Thomas*, 985 A.2d 928, 937 n.11 (Pa. 2009)).

Recently, in *Lewis*, our Supreme Court considered "the quantum of evidence necessary to prove an area is high in crime, such that a suppression court may properly consider that fact among the totality of the circumstances when assessing whether reasonable suspicion existed at the time of a stop." *Lewis*, 343 A.3d at 1021.

Initially, the *Lewis* Court noted that the Pennsylvania Supreme Court "has long recognized a suspect's presence in a high-crime area as a relevant factor in assessing reasonable suspicion." *Id.* at 1029. The *Lewis* Court observed, however, that "over time, general designations of neighborhoods as 'high crime' areas seems to have become a box-checking heuristic for law

enforcement in search-and-seizure cases." *Lewis*, 343 A.3d at 1031 (citation

and quotations marks omitted).

Seeking to "rectify this apparent problem," *id.* at 1032, the *Lewis* Court

stated that,

> although we decline to impose a statistics requirement or adopt a strict test that must be satisfied before suppression courts may consider the relevant characteristics of an area when conducting a reasonable suspicion analysis, one point cannot be overstated: **merely intoning the words "high-crime area" is never sufficient to prove an area is, in fact, high in crime**. *See generally Interest of T.W.*, 261 A.3d 409, 438 (Pa. 2021) (Dougherty, J., concurring) (cautioning officers testifying at suppression hearings to "not rely on broad generalities, or assume certain 'magic words' will satisfy the reasonable suspicion standard"). The Commonwealth bears the burden of proving a high-crime area is, in fact, high in crime, *see* Pa.R.Crim.P. 581(H) ("The Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights."), and the suppression court is free to discredit the Commonwealth's evidence when appropriate, *see Commonwealth v. Poplawski*, 130 A.3d 697, 711 (Pa. 2015) (it is within the "sole province" of the suppression court "to pass on the credibility of witnesses and the weight to be given their testimony").

*Lewis*, 343 A.3d at 1035-36 (emphasis added; some citations modified).

The *Lewis* Court set forth the following nonexclusive list of factors for

trial courts to consider in evaluating whether a location merits the designation

of a high-crime area:

> [W]e hold that when assessing whether an area is high in crime, a suppression court may consider a variety of factors, including, but not limited to: the geographic scope of the high-crime area; the nexus between the type of crime the area is known for and the type of crime suspected on the day of the stop; the officer's level of familiarity with the area; the recency of the officer's information; empirical data known to the officer; and the

assignment of specialized police units targeting high-crime areas. …. However, these factors are discretionary, not mandatory, and it is ultimately up to suppression courts to determine if the Commonwealth has met its burden of proof.

*Id.* at 1036 (citations omitted); *see also id.* at 1036 n.12 (explaining that "[i]f the defense believes a claimed high-crime area designation is overbroad or outdated, it is free to probe that issue on cross-examination.").

The **Lewis** Court continued, "if the suppression court is satisfied the Commonwealth has introduced sufficient credible evidence implicating the area is high in crime, the court must then determine in its sole discretion what weight to assign to this factor." **Id.** "In any event, we believe **suppression judges are best suited to make such assessments**, and that they are capable of doing so without the constraints of a multi-prong test." **Id.** (footnote omitted; emphasis added).

Having set forth the applicable law, we turn to the parties' arguments.

Appellant argues her arrest was primarily based on Officer Lawrence's observation of a syringe in her purse. **See** Appellant's Substituted Brief at 15. Appellant argues the other factors the Commonwealth and trial court relied on in justifying her arrest did not establish probable cause. **See id.** at 22, 26-27; Appellant's Substituted Reply Brief at 12-16.

Pertinently, Appellant maintains that whether her encounter with law enforcement occurred in a high-crime area is irrelevant to the trial court's totality-of-the-circumstances analysis. Appellant's Substituted Brief at 24 (arguing, "As in **Barr**, the police here did not notice [Appellant] 'doing

anything suspicious' when they approached." (quoting **Barr**, 266 A.3d at 44)). Alternatively, Appellant argues the trial court erred by finding that her arrest occurred in a high-crime area, because Officer Lawrence "cited no statistics to support this claim, and did not testify about his training and experience or how long he had worked in Mount Oliver[,] specifically." **Id.** at 22.

Appellant relies on **Barr** and **Commonwealth v. Hicks**, 208 A.3d 916 (Pa. 2019), as establishing why possession of an otherwise lawful object, "without other *indicia* of illegal activity, does not establish probable cause of criminal activity." Appellant's Substituted Brief at 18.

In **Hicks**, the Supreme Court considered a claim involving possession of a concealed firearm. The **Hicks** Court concluded police cannot detain an individual based solely on possession of a concealed firearm in public. **Hicks**, 208 A.3d at 936. The Supreme Court criticized *per se* rules that obviate the government's obligation to establish reasonable, individualized suspicion:

> Unless a police officer has prior knowledge that a specific individual is not permitted to carry a concealed firearm, and absent articulable facts supporting reasonable suspicion that a firearm is being used or intended to be used in a criminal manner, there simply is no justification for the conclusion that the mere possession of a firearm, where it lawfully may be carried, is alone suggestive of criminal activity.

*Id.* at 937.

Subsequently, in **Barr**, the Supreme Court held "that the smell of marijuana may be a factor, but not a stand-alone one, in determining whether the totality of the circumstances established probable cause to permit a police

officer to conduct a warrantless search of a vehicle." ***Barr***, 266 A.3d at 28.

The Supreme Court

> [e]mphasize[d] that the realization that a particular factor contributing to probable cause may involve legal conduct does not render consideration of the factor *per se* impermissible, so long as the factor is considered along with other factors that, in combination, suggest that criminal activity is afoot. … [**T**]**he totality-of-the-circumstances analysis encompasses the consideration of factors that may arguably be innocent in nature**.

***Id.*** at 41-42 (emphasis added).[12]

Here, the Commonwealth acknowledges possession of syringes does not establish probable cause as a stand-alone factor, but counters that Officer Lawrence did not rely solely on his observation of syringes in Appellant's purse. ***See*** Commonwealth Substituted Brief at 11. Instead, the Commonwealth argues Officer Lawrence relied on several factors to support Appellant's arrest: 1) her presence "in a location known for its drug activity";

---

[12] Appellant claims that the Court in ***Barr*** "found a neighborhood's 'characteristics' to be irrelevant to [a] probable cause analysis." Appellant's Substituted Brief at 23. This broad interpretation of ***Barr***'s holding is unsupported by its stated rationale. In ***Barr***, the arresting officer "stated on at least two occasions that he conducted a probable cause search of the vehicle in question based upon the smell of marijuana[,]" and law enforcement "did not witness the occupants of the vehicle do anything suspicious…." ***Barr***, 266 A.3d at 44. The ***Barr*** Court held, "Because the troopers simply stopped the vehicle for a minor traffic violation and then smelled marijuana upon approaching the vehicle, it is of no moment whether the area in which the stop occurred is known as a 'high[-]crime area.'" ***Id.***; ***see also Lewis***, 343 A.3d at 1031 ("[T]he only suspected criminal activity in [***Barr***] revolved around the presence of the odor of marijuana, which smells the same in high-crime areas as it does in low-crime areas.").

2) her "nodding off" at a bus stop; 3) her effort to "conceal" syringes in her purse; and 4) her failure to explain her possession of the syringes.[13] *Id.* at 19-20.

Both parties cite the analogous case of *Commonwealth v. Bumbarger*, 231 A.3d 10 (Pa. Super. 2020), as supporting their respective positions. Appellant's Substituted Brief at 25-26; Commonwealth's Substituted Brief at 21-23. In *Bumbarger*, Trooper Shane Murarik (Trooper Murarik), who had prior encounters with the defendant, observed the defendant and confirmed the defendant had an outstanding warrant for his arrest. *See Bumbarger*, 231 A.3d at 13. After conducting a traffic stop and taking the defendant into custody, Trooper Murarik spoke with the defendant's passenger, Roberta Sheaffer (the passenger), who was a known drug user. *See id.* at 14. Trooper Murarik believed the passenger was under the influence of a controlled substance and asked her to step out of the vehicle. *See id.* As the passenger was exiting the vehicle, Trooper Murarik observed

---

[13] Regarding the Commonwealth's last argument, we note that on cross-examination, Officer Lawrence confirmed that he did not ask Appellant whether she had "any medical issues[,]" and testified, "[Appellant] probably saw that I saw the syringes and pushed them to the side. So at that point I just detained [Appellant] and advised her [that] she was under arrest." N.T., 3/8/23, at 12. Because Officer Lawrence arrested Appellant immediately upon observing the syringes, the Commonwealth cannot rely on Appellant's silence as evidence in support of its probable cause analysis. *See Commonwealth v. Krzan*, 325 A.3d 714, 719-20 (Pa. Super. 2024) ("[T]he prosecution may not use a defendant's decision to remain silent during the preliminary stages of a criminal investigation as substantive evidence." (citations omitted)), *appeal granted*, 341 A.3d 64 (Pa. 2025).

two syringes under the passenger seat. *See id.* Trooper Murarik conducted a probable cause search of the vehicle,[14] and recovered a firearm and methamphetamine. *See id.* at 14.

On appeal following his convictions for drug and firearm offenses, the defendant challenged the trial court's denial of his suppression motion. *See id.* at 15. Relevantly, he claimed that law enforcement searched his vehicle without probable cause. *See id.* The defendant argued "the two syringes the Trooper claimed he observed when he had the passenger step out of the vehicle did not possess an incriminating character that was immediately apparent…." *Id.*

In concluding the defendant's claim lacked merit, this Court relied on the following relevant facts:

> Here, Trooper Murarik approached the passenger of the vehicle as part of the lawful stop. Trooper Murarik knew [the passenger], and knew of her drug use and sales history. [The passenger's] appearance reflected that she was under the influence of drugs. Moreover, when Trooper Murarik lawfully asked [the passenger] to exit the vehicle in accordance with the lawful stop, he observed drug paraphernalia in plain view. Accordingly, we conclude that Trooper Murarik did not unlawfully detain [the passenger] or ask her to exit the vehicle. Furthermore, given his observation of [the passenger's] appearance, his knowledge of [the passenger's] drug-use history, and the observation of the syringes, Trooper Murarik had reason to suspect criminal activity. Thus, Trooper Murarik had probable cause to search the vehicle.

---

[14] The **Bumbarger** case was decided prior to our Supreme Court's pronouncement in **Commonwealth v. Alexander**, 243 A.3d 177, 195 (Pa. 2020), that "warrantless vehicle searches require[] both probable cause and exigent circumstances."

*Id.* at 18 (citations and footnote omitted).

We additionally recognized "hypodermic syringes are specifically included in the definition of 'drug paraphernalia[,]'" and "the circumstantial evidence in this case regarding the syringes supports the conclusion that they were drug paraphernalia." ***Id*.** at 19 (citation omitted).

> Furthermore, the location and unsecured nature of the syringes on the floor of the vehicle were not consistent with use of the syringes for medical purposes. Moreover, [the passenger] appeared to be under the influence of drugs, and the syringes were in close proximity to her person in the vehicle. Upon having her attention directed to the syringes, [the passenger] did not indicate that the syringes were for medical use. Also, [the passenger] was known by Trooper Murarik to use and sell drugs. Given the totality of [the] circumstances, it was reasonable for Trooper Murarik to believe that these syringes were being used for a criminal purpose. Thus, discovery of these syringes **in connection with the other relevant factors suggesting illegal drug use** constituted probable cause to search the vehicle.

*Id.* (citations omitted; emphasis added).

Instantly, the trial court rejected Appellant's argument that Officer Lawrence conducted an unlawful search incident to arrest:

> [The trial court] find[s] that [] Officer[ Lawrence's] actions were reasonable, legal and proper in [his] approach to check on [Appellant] and to ask [Appellant] for identification. Once Officer Lawrence observed the syringes and [Appellant] toss them to the side in her purse, we look at the totality of the circumstances to determine whether probable cause exists to arrest. [The trial court] find[s] that [Appellant] was alone, standing up, nodding off, … **at a bus stop in a high crime area**[,] with syringes in her purse[,] which are known to be drug paraphernalia associated with the use of the narcotics that cause a user to nod. For these reasons, the facts in this case are distinguished from the facts in …. ***Hicks***, 208 A.3d [at] 936 ….

Trial Court Opinion, 7/7/23, at 4 (unpaginated) (emphasis added).

- 25 -

We agree with the trial court that **Hicks** is distinguishable from the instant case, as **Hicks** concluded that there is "no justification for the conclusion that the mere possession of a firearm, where it lawfully may be carried, is **alone** suggestive of criminal activity." **Hicks**, 208 A.3d at 937 (emphasis added). **Barr**, likewise, is distinguishable, as it held "the smell of marijuana **alone** cannot create probable cause to justify a search …." **Barr**, 266 A.3d at 41 (emphasis added).

As set forth in **Bumbarger**, the presence of syringes, "**in connection with** [] **other relevant factors** suggesting illegal drug use[,]" may supply probable cause for a search, or (in this case) an arrest. **Bumbarger**, 231 A.3d at 19. Here, Officer Lawrence testified to other potentially relevant factors, including his observations of Appellant "nodding off," "leaning on" a trash can for support, and attempting to conceal the syringes. N.T., 2/2/23, at 5, 7, 11, 12; **see also id.** at 10 (Officer Lawrence confirming that he "suspected [Appellant of] being intoxicated with narcotics").

However, upon review, it is evident the trial court's high-crime-area finding was a significant factor in its totality-of-the-circumstances analysis in determining whether Officer Lawrence had probable cause to arrest Appellant. Trial Court Opinion, 7/7/23, at 4.[15] The parties' advocacy at the suppression

---

[15] As the **Lewis** Court explained, in **Barr**, "the fact that the area where the stop occurred was generally high in crime would have added nothing probative to the legal determination of whether the police had probable cause to search the vehicle." **Lewis**, 343 A.3d at 1031. Instantly, however, Officer

hearing, and the trial court's subsequent factfinding, did not have the benefit of the guidance supplied by **Lewis**, which was decided during the pendency of Appellant's direct appeal.

Under these circumstances, we conclude the prudent course is to vacate Appellant's judgment of sentence, and remand the matter for an evidentiary hearing pertinent to the issue of whether law enforcement's interaction with Appellant occurred in a high-crime area, consistent with the factors announced in **Lewis**. **See Commonwealth v. Romero**, 183 A.3d 364, 406 (Pa. 2018) (plurality) ("Because we have rejected the Superior Court's framework and established a new legal standard, and because parties whose cases are pending upon direct appeal ordinarily are entitled to the benefit of changes in the law, we will not fault the Commonwealth for its failure to introduce [evidence that would satisfy the new standard] in the first instance." (citation omitted));[16] **see also Lewis**, 343 A.3d at 1036 (observing that "suppression

_____

Lawrence's opinion that the area in which he encountered Appellant was a "high drug area" is significant to the probable cause analysis, in that it may have informed his judgment concerning why Appellant was "nodding off," why she was in possession of syringes, and why she allegedly attempted to conceal those syringes. **See id.** ("[A]n officer observing a hand-to-hand transaction on a street corner will naturally be more suspicious if he knows the corner is a hotspot for heroin sales than if the corner has no meaningful history of drug trafficking." (citation omitted)). Consequently, we reject Appellant's argument that the potentially high-crime nature of the area in which she was arrested is legally irrelevant.

[16] Although a plurality opinion, **Romero**'s disposition (remanding to permit the Commonwealth to introduce evidence satisfying a newly-established legal standard) garnered a majority of the Court. **See Romero**, 115 A.3d at 406, 409.

judges are best suited to make [] assessments," regarding whether "the Commonwealth has introduced sufficient credible evidence implicating the area is high in crime, … [and] what weight to assign to this factor." (citation omitted)). If after conducting a new hearing, and considering **Lewis**'s guidance, the trial court denies Appellant's suppression motion, it shall reinstate Appellant's sentence without the need for a new trial.

Application for relief denied as moot. Judgment of sentence vacated. Case remanded with instructions consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 6/30/2026